IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT BRIAN JOHNSON

    PLAINTIFF,                                              NO. 3:12-cv-0809

v.                                                                    JUDGE TRAUGER

SHERIFF JEFF BLEDSOE,                         MAGISTRATE KNOWLES
in his Official Capacity; and
DICKSON COUNTY, TENNESSEE.                JURY DEMANDED

    DEFENDANT.

<u>INITIAL CASE MANAGEMENT ORDER</u>

A Case Management Conference is scheduled to be held in the above-entitled action on Monday, October 22, 2012, at 1:30 p.m. Pursuant to Local Rule 16.01(d)(1)(b), the parties submit this Proposed Order for entry by the Court.

    **A.**    **JURISDICTION:** The court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.

    **B.**    **BRIEF THEORIES OF THE PARTIES:**

    **1)**    **PLAINTIFF'S THEORY:**

Plaintiff began working for Defendants as a law enforcement officer around 2001. In August of 2008, Plaintiff was assigned to the DICE Interdiction Team for Dickson County. On or about October 2009, Plaintiff was assigned a police canine and became a canine officer for the Defendants. As such, Plaintiff was required, and Defendants did in fact require, Plaintiff to perform work in furtherance of his employer's interest by caring for his canine, by donning and doffing appropriate canine gear, and by maintaining the dog in accordance with Defendants' policy. Indeed, the dog at issue was very valuable and costs in excess of $5000.00.

Therefore, it was in the Defendants' best interest that Plaintiff maintain the dog's health and perform other activities necessary to insure that the dog was a reliable and safe drug detection tool designed to protect the citizens of Tennessee. Plaintiff, in order to maintain the dog's skills, worked the dog from October of 2009 until July of 2011. On numerous occasions, Plaintiff requested to be paid for activities necessary to maintain the dog's health and law enforcement skills since he became responsible for handling the canine. However, Defendants willfully refused to pay the Plaintiff for this time.

During his employment, as well as after, Plaintiff continuously maintained that he was entitled to be paid wages for his canine related work. At one point, Defendants agreed to pay Plaintiff for additional activities related to caring for the canine and Plaintiff was actually paid for these services from August 28, 2010 through October 23, 2010 pursuant to a written agreement signed by Plaintiff and the previous Sheriff, Tom Wall. Further, Plaintiff discussed receiving payment for his unpaid wages for his previous work with the canine from October 2009 through August 28, 2010 and was assured that Defendants would resolve this situation. However, this representation was false, and the Defendants knew it was false. However, Plaintiff had no reason to know that the Defendants were misrepresenting the facts to him. Therefore, in reasonable reliance upon the Defendants' misrepresentations, Plaintiff forestalled filing suit.

After Defendant Bledsoe became Sherriff around September 2010, Plaintiff's pay for work related to the upkeep of the canine was cut from approximately 32 hours per month to 16 hours per month on or about October 23, 2010 in breach of the agreement to pay these wages entered into by Plaintiff and Sheriff Wall. When Plaintiff's wages pay for canine related services were cut, Plaintiff also discussed the failure to pay wages for canine related services from October 2009 through August 28, 2010 with Chief Deputy Jerome Holt. However, Chief Deputy Jerome Holt simply laughed at Plaintiff and instructed him to sue the previous administration for his unpaid

wages. On or about November 6, 2010, Defendants completely stopped paying Plaintiff any wages for canine related services. Instead, Defendants required Plaintiff to receive comp time in lieu of wages from November 6, 2010, through July 2011. After Plaintiff quit working for Defendants on July 9, 2011, Plaintiff requested that the Defendants pick up the canine. However, Defendants failed to pick up the canine from Plaintiff until July 15, 2011. Therefore, Plaintiff maintains that he is entitled to payment of wages for this period of time that he continued to maintain the canine for the use and benefit of the Defendants.

Therefore, there remain wages due the Plaintiff. In fact, eventually, the Defendants started paying Plaintiff for the activities at issue pursuant to written agreement but the Defendants thereafter refused to pay Plaintiff proper wages in breach of contract. Consequently, as a direct and proximate cause of Defendants' violations of the FLSA and their breach of contract, Plaintiff has lost wages that have accrued since 2009 until he quit and the Defendants picked up the canine in July of 2011. Further, Plaintiff avers that Defendants' actions have been willful so as to justify the imposition of liquidated damages.

At all time material, Plaintiff was an employee of Defendants working and receiving W-2 wages. Therefore, Plaintiff is entitled to the protections of the FLSA. By failing to pay Plaintiff wages when due as set forth herein, Defendants have willfully violated the provisions of the FLSA. Accordingly, Plaintiff has lost wages, earning capacity and incurred other damages to be proven at trial.

Further, after Plaintiff complained to Defendants concerning their failure to pay him wages for his services and activities in maintaining the canine officer, Defendants agreed to pay Plaintiff these wages. In fact, Plaintiff and Sheriff Tom Wall entered into a written contract to pay overtime wages on August 16, 2010. However, Defendants discontinued paying Plaintiff for services related to maintaining the canine in breach of this agreement. As a result of the Defendants' breach of the

agreement to pay Plaintiff wages for maintaining the canine officer, Plaintiff suffered a loss of wages and is entitled to his lost wages plus pre-judgment interest.

Based on the Defendant's violation of the FLSA and breach of contract, Plaintiff prays for appropriate compensatory and liquidated damages for reasonable attorney fees and costs, pre- and post judgment interest, for a trial by jury, and for all other just and proper relief.

## 2) DEFENDANT'S THEORY

Plaintiff began working for Defendant as a law enforcement officer in or around in 2001. In August 2008, Plaintiff was assigned to the DICE Interdiction Team for Dickson County. On or about October 2009, Plaintiff was assigned a police K-9 and became a K-9 officer. The K-9 in question was purchased for approximately $5,000.00. The Plaintiff was assigned to work the dog from in or around October 2009 until July 2011.

A new Dickson County Sheriff was elected during the countywide elections which took place during the first week of August 2010. Prior to leaving office, outgoing Dickson County Sheriff Tom Wall signed a statement dated August 16, 2010 agreeing to pay the Plaintiff prospectively 32 hours of overtime per month for the "handling, training, and caring of the K-9". Sheriff Jeff Bledsoe assumed office the first week of September 2010. Sheriff Bledsoe continued to honor the specific payment agreement executed by outgoing Sheriff Tom Wall until on or about October 23, 2010. At said time, Sheriff Jeff Bledsoe reduced Plaintiff's overtime compensation.

However, the Plaintiff continued to receive full compensation for all time he actually worked handling, training, and caring for the K-9. The new administration did not believe that 32 overtime hours per month were necessary.

It is specifically denied that any of the actions taken by the Dickson County Sheriff's Office were a breach of an alleged contract or a violation of the Fair Labor Standards Act. It is further specifically denied that the Plaintiff has not been appropriately and fully compensated for his work.

C. **ISSUES RESOLVED**: Jurisdiction and venue.

D. **ISSUES STILL IN DISPUTE:** Liability and damages.

E. **INITIAL DISCLOSURES:** The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within fifteen (15) (30) days from the date of the initial case management conference, on or before **November 6, 2012.**

F. **DISCOVERY:** The parties shall complete all written discovery and depose all fact witnesses on or before **March 1, 2013**. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 9(a)(2) is expanded to allow forty (40) interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

G. **MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before **February 1, 2013**.

H. **DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **March 15, 2013**. The Defendant shall identify and disclose all expert witnesses and reports on or before **April 15, 2013**.

I. **DEPOSITIONS OF EXPERT WITNESSES:** The parties shall depose all expert witnesses on or before **Friday, May 15, 2013**.

J. **JOINT MEDIATION REPORT:** The parties shall file a joint mediation report on or before **January 15, 2013**.

K. **DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **May 1, 2013**. Responses to dispositive motions shall be filed within thirty (30) days after the filing of the motion. Optional replies may be filed within ten (10) days after the filing of the response. Briefs shall not exceed twenty (20) pages. No motion for partial summary judgment shall

be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

**L. ELECTRONIC DISCOVERY:** The parties do not know to what extent electronic discovery is necessary in this case. To the extent that either party wishes to engaged in e-discovery, on or before, **December 1, 2012**, each party will exchange a list of most likely custodians of relevant electronically stored information, a list of the parties relevant electronic storage systems, the name of an e-discovery coordinator (if applicable) and a list of searchable terms. Each party receiving such a list with conduct an e-discovery search all relevant documents on or before **January 15, 2013.**

**M. PRIVILEGED INFORMATION:** Regarding the handling of privileged information, the parties believe that there may be documents and other information that may be produced in discovery that are commercially sensitive or otherwise confidential in nature. The parties will work together to agree on a form of protective order that includes special procedures and a mechanism for the appropriate protection of such information and for filing certain documents under seal when necessary, and submit the proposed protective order to the court for its approval.

**N. ESTIMATED TRIAL TIME:** The parties expect the trial to last approximately four (2) to (3) days.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY

/s/ Andrew C. Clarke
Andrew C. Clarke, BPR No. 15409
6250 Poplar Avenue, Second Floor
Memphis, Tennessee 38119
Telephone: (901) 590-0761
Facsimile: (901) 590-0776
aclarke@accfirm.com
*Counsel for Plaintiff*

 /s/ Timothy V. Potter
TIMOTHY V. POTTER #17520
Attorney for Defendants
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been forwarded by electronic means via the Court's electronic filing system to the following on this 18th day of October, 2012.

TIMOTHY V. POTTER #17520
Attorney for Defendants
Reynolds, Potter, Ragan & Vandivort, PLC
210 East College Street
Dickson, Tennessee 37055
615.446.2221
615.446.2232 Facsimile
tpotter@rprvlaw.com

                /s/ Andrew C. Clarke
                Andrew C. Clarke